

ENTERED
05/16/2017

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | |
| **ATP OIL & GAS CORPORATION** | § | **CASE NO: 12-36187** |
| **Debtor(s)** | § | |
| | § | **CHAPTER 7** |
| | § | |
| **RODNEY TOW, CHAPTER 7 TRUSTEE** | § | |
| **Plaintiff(s)** | § | |
| | § | |
| **VS.** | § | **ADVERSARY NO. 15-3179** |
| | § | |
| **T PAUL BULMAHN, *et al*** | § | |
| **Defendant(s)** | § | |

**MEMORANDUM OPINION**

On June 26, 2015, Rodney Tow, Trustee, filed this adversary proceeding against certain brokerages that provided proxy representation for holders of preferred stock in ATP, ("Brokerage Defendants"), and certain holders of preferred stock in ATP ("Preferred Stockholder Defendants").

At the time the initial complaint was filed, Tow did not have sufficient information to identify all of the Preferred Stockholder Defendants by name. (ECF No. 1 at 8). Consequently, in the original complaint, Tow referred to these unidentified Preferred Stockholders as John Doe 1 through John Doe 553. (*Id.*). On August 16, 2016, Tow filed his first amended complaint in which he identified all of the Preferred Stockholders by name. (ECF No. 300).

Certain of the Preferred Stockholder Defendants[1] identified in Tow's amended complaint filed motions to dismiss Tow's amended complaint. (ECF No. 340 and 362). One of the primary bases for dismissal was that Tow's claims are barred by 11 U.S.C. § 546's statute of

[1] The Movant Preferred Stockholder Defendants are: (1) AllianzGI Convertible & Income Fund II; (2) AllianzGI Global Equity & Convertible Income Fund; (3) Allianz Global Investors Fund Management LLC; (4) Fidelity Management & Research Company; (5) Fidelity Salem Street Trust – Fidelity Strategic D/Convertible Securities FD; and (6) Greenleaf Trust.

limitations. In his response to the motions to dismiss, Tow argued for the first time that he is entitled to equitable tolling of the statute of limitations.

On December 19, 2016, the Court issued a Memorandum Opinion in which it found that Tow's Amended Complaint did not relate back to those defendants he identified as John Doe. The Court characterized Tow's equitable tolling argument as an informal motion for leave to amend his complaint. The Court stated, "[a]t the evidentiary hearing Tow must demonstrate that, despite the exercise of due diligence, he could not have discovered the identity of the defendants before the limitations period expired." (ECF No. 394 at 10).

The Court held an evidentiary hearing on Tow's motion for leave to amend on January 30, 2016. As set forth below, Tow's motion for leave to amend is denied as futile. Accordingly, Tow's claims against the Movant Preferred Stockholder Defendants are dismissed.

**Rule 12(b)(6) Standard**

The Court reviews motions under Fed. R. Civ. P. 12(b)(6) by "accepting all well-pleaded facts as true and viewing those facts in the light most favorable to plaintiffs." *Stokes v. Gann*, 498 F.3d 483, 484 (5th Cir. 2007) (per curiam). However, the Court "will not strain to find inferences favorable to the plaintiff." *Southland Sec. Corp. v. INSpire Ins. Solutions Inc.*, 365 F.3d 353, 361 (5th Cir. 2004) (internal quotations omitted).

To avoid dismissal for failure to state a claim, a plaintiff must meet Fed. R. Civ. P. 8(a)(2)'s pleading requirements. Rule 8(a)(2) requires a plaintiff to plead a "short and plain statement of the claim showing that the pleader is entitled to relief." In *Ashcroft v. Iqbal*, the Supreme Court held that Rule 8(a)(2) requires that the "well-pleaded facts" must "permit the court to infer more than the mere possibility of misconduct." 556 U.S. 662, 679 (2009) (quoting Rule 8(a)(2)). "Only a complaint that states a plausible claim for relief survives a motion to

dismiss." *Id.* (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "[A] complaint does not need detailed factual allegations, but must provide the plaintiffs grounds for entitlement to relief—including factual allegations that when assumed to be true raise a right to relief above the speculative level." *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009) (internal quotations omitted).

**Jurisdiction**

At a minimum, this Court has "related to" jurisdiction pursuant to 28 U.S.C. § 1334(b). Section 1334 provides that district courts have subject matter jurisdiction over all "civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b). With respect to bankruptcy cases that remain open, the Fifth Circuit has held that "it is not necessary to distinguish between proceedings 'arising under', 'arising in a case under', or 'related to a case under', title 11." *Wood v. Wood (In re Wood)*, 825 F.2d 90, 93 (5th Cir. 1987). The Fifth Circuit noted that § 1334(b)'s language operates "conjunctively to define the scope of jurisdiction." *Id.* Consequently, bankruptcy courts need only "determine whether a matter is at least 'related to' the bankruptcy." *Bass v. Denney (In re Bass)*, 171 F.3d 1016, 1022 (5th Cir. 1999) (citing *Walker v. Cadle Co. (In re Walker)*, 51 F.3d 562, 569 (5th Cir. 1995); *In re Wood*, 825 F.2d at 93).

The Fifth Circuit has construed "related to" jurisdiction broadly. *See TXNB Internal Case v. GPR Holdings L.L.C. (In re TXNB Internal Case)*, 483 F.3d 292, 298 (5th Cir. 2007). An adversary proceeding falls within the court's "related to" jurisdiction if "the outcome of that proceeding could *conceivably* have any effect on the estate being administered in bankruptcy." *In re Wood*, 825 F.2d at 93 (citing *Pacor, Inc. v. Higgins (In re Pacor)*, 743 F.2d 984, 994 (3rd Cir. 1984)). The adjudication of the claims in this lawsuit could potentially result in a benefit to

ATP's bankruptcy estate. Accordingly, the Court possesses subject matter jurisdiction over this adversary proceeding.

**Constitutional Authority**

Although subject matter jurisdiction is proper in this Court, questions regarding an Article I judge's constitutional authority must be addressed. Under *Stern v. Marshall*, the Supreme Court held that whether a bankruptcy court can enter a final judgment in a case depends on whether the cause of action stems from the bankruptcy itself or would necessarily be resolved in the claims allowance process. 131 S.Ct. 2594, 2618 (2011). This adversary proceeding involves state law claims and would not necessarily be resolved in the claims allowance process. Tow has affirmatively consented to this Court's issuing a final judgment in this adversary proceeding. (ECF No. 300 at 3). The Movant Preferred Stockholder Defendants have not affirmatively consented to the entry of a final judgment. *See Wellness Int'l Network, Ltd. v. Sharif*, 135 S.Ct. 1932 (2015) ("We hold that Article III is not violated when the parties knowingly and voluntarily consent to adjudication by a bankruptcy judge").

Although it is unlikely this Court possesses the necessary constitutional authority to enter final judgment, a court may still issue interlocutory orders in proceedings where the court lacks authority to issue a final judgment. *Trevino v. HSBC Mortg. Serv. (In re Trevino)*, 535 B.R. 110, 125 (Bankr. S.D. Tex. 2015); *See also In re Trinsum Grp., Inc.*, 467 B.R. 734, 739 (Bankr. S.D.N.Y. 2012) ("After *Stern v. Marshall*, the ability of bankruptcy judges to enter interlocutory orders in non-core proceedings . . . has been reaffirmed."); *Burtch v. Avnet (In re Managed Storage Int'l)*, 2012 WL 5921723, at *2 (Bankr. Del. Nov. 26, 2012). An order resolving fewer than all of the claims or the rights and liabilities of fewer than all the parties is interlocutory.

Fed. R. Civ. P. 54(b). As the Court is not dismissing all claims presented in this lawsuit, the Order accompanying this memorandum opinion is interlocutory.

If the Movant Defendants consent to this Court's authority, this Order will be merged with the final judgment issued in this adversary proceeding and may be appealed at that point. Otherwise, the Court will issue a Report and Recommendation to the district court contemporaneously with the final judgment in this adversary proceeding.

**Background**

On August 17, 2012, ATP Oil & Gas Corp. filed a Chapter 11 bankruptcy petition. On June 26, 2014, the Court converted the Chapter 11 case to a case under Chapter 7. (ECF No. 3165). Tow alleges that in 2012 ATP paid dividends on account of certain ATP preferred shares in the months of January ($6,312,500.00), April ($6,178,950.00), and July ($6,178,948.00). The July dividend payment is alleged to have occurred within less than 90 days prior to ATP filing its Chapter 11 petition. (ECF No. 300 at 10-12).

Tow alleges that the dividends were remitted by ATP to the transfer agent, American Stock Transfer & Trust Company, LLC. The dividends were then transferred to Cede & Co. (also known as Depository Trust Company), who held the Preferred Stockholder certificates. Cede & Co. then distributed the funds to the Brokerage Defendants. Tow alleges that "depending on the type of Brokerage Defendant in question, those funds were either held by the Brokerage Defendants or distributed directly to the Preferred Stockholder Defendants." (ECF No. 300 at 12-13).

Tow seeks to avoid the dividend payments. This Memorandum Opinion addresses only whether Tow is entitled to the equitable tolling of the statute of limitations contained in

11 U.S.C. § 546 in order to pursue his avoidance actions against the Movant Preferred Stockholder Defendants.

*Chronology*

The ATP Oil & Gas Corp. bankruptcy case was converted to a case under Chapter 7 on June 26, 2014. (Case No. 12-36187 at ECF No. 3163). Tow was appointed trustee of ATP's bankruptcy estate. (*Id.* at ECF No. 3165). Immediately thereafter, Tow retained the law firm of Cooper & Scully to represent ATP's bankruptcy estate. (12-36187 at ECF No. 3496). Tow acknowledges that at the time of his appointment he knew of the potential claims related to the dividend payments ATP made to its preferred stockholders. (ECF No. 376 at 6). Following appointment, Tow began investigating the facts surrounding the dividend payments and the identities of the beneficial owners of the preferred stock. (*Id.*).

On July 10, 2014, several attorneys from Cooper & Scully met with Al Reese, CFO of ATP. Reese was generally helpful in providing trustee's counsel with information regarding the estate, but did not assist with respect to identifying the holders of preferred stock. (ECF No. 410 at 6). On July 29, 2014, Mike Biles, counsel for the directors and officers of ATP, informed Cooper & Scully that American Stock Transfer ("AST") held the preferred stockholder information. (ECF No. 410 at 7).

On August 11, Tow sent a subpoena to AST requesting documents related to the dividend payments. (*Id.*). A response by AST was due on September 12, 2014. (Case No. 12-36187, ECF No. 3298). AST did not produce responsive documents by the deadline. On October 16, 2014, a paralegal at Cooper & Scully requested an update from AST regarding the status of its response. (ECF No. 376-1). On December 10, 2014, after no response was received, Tow filed a motion to compel production. (*Id.*). A hearing was set on Tow's motion for January 22, 2015

at 1:30 p.m. (Case No. 12-36187, ECF No. 3423). On January 21, 2015, AST provided Tow with two years of dividend payment information and Tow withdrew his motion to compel. (ECF No. 410 at 14). The produced records reflected the date, amount, and recipient of dividend payments made in 2011 and 2012. (*Id.* at 15). The vast majority of the dividends were paid to Cede & Co.[2] (*Id.*).

On January 30, 2015, Tow sent a subpoena to Depository Trust Company ("DTC") requesting all of its records that might contain the identities of the preferred stockholders. (ECF No. 410 at 16). On March 4, 2015, Cooper & Scully was informed that DTC did not have any documents responsive to the subpoena. (*Id.* at 18). In response, Cooper & Scully contacted Don Maj at DTC and explained to him the specific information it was seeking. (*Id.*). On April 20, 2015, DTC produced ten pages of documents. Sometime thereafter, DTC produced additional documents. (*Id.* at 19). In general, the DTC documentation reflected the brokerage entity that received the dividend payment, but did not reveal the identities of the ultimate beneficial preferred stockholders. (*Id.* at 20).

Between April 21, 2015, and June 2, 2015, Tow sent approximately 71 subpoenas to various banks and brokerage entities. (ECF No. 410 at 21-22). On May 28, 2015, subpoenas were sent to Citibank, N.A. and Citigroup Global Markets, Inc. (collectively "Citi").[3] (*Id.*). The Citi entities were brokerages that received dividend payments from Cede & Co. (*Id.* at 22). Citi responded to the subpoenas on June 16, 2015. (*Id.* at 25). The documents produced by Citi were redacted so as not to include the account name or the identity of the preferred stockholders.

[2] Cede & Co. is the largest holder of equity securities in the United States. It is the nominee of Depository Trust Company.

[3] Citibank and Citigroup submitted a joint response to Tow's subpoenas.

(Trustee's Ex. 90). On June 26, 2015, the final day of the limitations period, Tow filed this adversary proceeding, identifying the preferred stockholders as John Doe.

**Analysis**

As set forth in the Court's December 19, 2016, Memorandum Opinion, the issue before the Court is narrow: whether Tow is entitled to equitable tolling of the statute of limitations in order to pursue his claims against the Movant Preferred Stockholder Defendants.

The statute of limitations is simply an affirmative defense. *IBT Int'l v. Northern (In re Int'l Admin. Servs., Inc.)*, 408 F.3d 689, 701 (11th Cir. 2005). As such, it is subject to equitable considerations such as estoppel and waiver. *Id.* The statute of limitations under § 546 may be equitably tolled. *Ernst & Young v. Matsumoto (In re United Ins. Mgmt., Inc.)*, 14 F.3d 1380, 1385 (9th Cir. 1994). There is no dispute regarding the date on which the limitations period expired with respect to Tow's claims. Pursuant to 11 U.S.C. § 546, any action under §§ 544, 547, and 548 (among others), must have been brought within one year of ATP's bankruptcy case converting to a case under Chapter 7. ATP's case was converted on June 26, 2014, making June 26, 2015, the last day to assert an avoidance claim. The original complaint in this adversary proceeding was filed on June 26, 2015. (ECF No. 1). Tow's amended complaint formally identifying all of the Preferred Stockholders was filed on August 16, 2016, fourteen months after the limitations period expired. (ECF No. 300). Accordingly, absent the application of equitable tolling, Tow's claims against the movants alleged in his amended complaint are barred by § 546's statute of limitations.

Equitable tolling may be applied when the defendants' active or passive concealment prevented the trustee from discovering their identity sooner. *See IBT Int'l*, 408 F.3d at 701. Alternatively, the statute of limitations may be equitably tolled if the trustee was delayed by

extraordinary circumstances. *See Id.*; *see also Hill v. Oria (In re Juliet Homes, LP)*, 2010 WL 5256806, at *12 (Bankr. S.D. Tex. Dec. 16, 2010). In either case, the trustee must demonstrate that despite exercising diligence, he could not have discovered the identity of the movant defendants prior to the expiration of the limitations period. *Id.*

At the January 30, 2017, evidentiary hearing, Tow introduced evidence to support equitable tolling. The purpose of the evidentiary hearing was to determine whether the allegations Tow proposed to plead in his amended complaint would justify equitable tolling.

*Extraordinary Circumstances*

Tow alleges extraordinary circumstances prevented him from filing a timely complaint identifying the preferred stockholder defendants. Tow's allegation is primarily directed to the dividend payment chain-of-custody which Tow likens to a never ending "rabbit hole." (ECF No. 410 at 16, 20). The evidence is clear that ATP issued the dividend payment through, in most cases, no fewer than three intermediaries. ATP first transmitted the dividend to AST who in turn transferred it to Cede & Co., the nominee of DTC. Cede & Co. transmitted it to various custodial banks and brokerage entities who finally delivered it to the beneficial preferred stockholders. To the casual observer it may appear that this scheme was designed to frustrate the discovery efforts of those, like Tow, intent on identifying the terminal recipients of the dividend payments. Nevertheless, this scheme is far from extraordinary. Legal title to the vast majority of equity securities is held in the name of DTC's nominee, Cede & Co. This structure facilitates stock trading because legal title to the stock certificate is never transferred; only beneficial title to the certificate changes hands. *In re Appraisal of Dell Inc.*, 2015 WL 4313206 (Del. Ch., July 30, 2015).

> DTC's place in the ownership structure results from the federal response to a paperwork crisis on Wall Street during the late 1960s and early 1970s. Increased

> trading volume in the securities markets overwhelmed the back offices of brokerage firms and the capabilities of transfer agents. No one could cope with the burdens of documenting stock trades using paper certificates. The markets were forced to declare trading holidays so administrators could catch up. With trading volumes continuing to climb, it was obvious that reform was needed. Congress directed the SEC to evaluate alternatives that would facilitate trading.
>
> After studying the issue, the SEC adopted a national policy of share immobilization. To carry out its policy the SEC placed a new entity—the depository institution—at the bottom [of] the ownership chain. DTC emerged as the only domestic depository. Over 800 custodial banks and brokers are participating members of DTC and maintain accounts with that institution. DTC holds shares on their behalf in fungible bulk, meaning that none of the shares are issued in the names of DTC's participants. Instead, all of the shares are issued in the name of Cede. Through a Fast Automated Securities Transfer account, DTC uses an electronic book entry system to track the number of shares of stock that each participant holds.
>
> By adding DTC to the bottom of the ownership chain, the SEC eliminated the need for the overwhelming majority of legal transfers. Before share immobilization, custodial banks and brokers held shares through their own nominees, so new certificates had to be issued frequently when shares traded. With share immobilization, legal title remains with Cede. No new certificates are required.

*Id.* at *1. Cede & Co. is required by federal law to provide to an issuer of securities a "securities position listing," known colloquially as a "Cede breakdown," which identifies the custodial banks and brokers who hold shares through DTC. 17 C.F.R. § 240.17Ad–8(b). The Cede breakdown lists for a particular date the custodial banks or brokers that hold shares of a particular security through DTC and the number of shares held. 2015 WL 4313206 at *4. A Cede breakdown can be obtained in a matter of minutes through "DTC's website or by calling the DTC 'Proxy Services Hotline.'" *Id.*; *Hatleigh Crop v. Lane Bryant*, 428 A.2d 350, 354 (Del. Ch. Feb. 5, 1981).[4] Indeed, on March 13, 2015, Don Maj, an attorney for DTC, informed Cooper

[4] The Court takes judicial notice of the general workings of DTC. *Lerman v. Diagnostic Data, Inc.*, 1980 WL 6411 (Del. Ch. 1980) (taking judicial notice of the "workings of the Depository Trust Company and its practice of holding stock in the name of Cede & Co.").

& Scully that the Cede breakdowns for the dates of the alleged transfers were available for a small fee. (Trustee's Ex. 34).

This structure, though perhaps not intuitive, is designed to accomplish the goal of facilitating stock trading while at the same time providing for swift determination of the identities of holders of beneficial title—that is—the entity for whose benefit Cede & Co. is holding the stock. This nearly 50-year-old ownership structure established by DTC and regulated by federal law is not an extraordinary circumstance upon which Tow can rely to support equitable tolling.

Tow also alleges that AST and DTC's delayed discovery responses constitute extraordinary circumstances. Tow argues that AST and DTC unjustifiably delayed production of documents responsive to Tow's August 11, 2014, and January 30, 2015, subpoenas. It is unlikely that ordinary discovery disputes that took place well before the statute of limitations period expired constitute extraordinary circumstances sufficient to justify equitable tolling. Furthermore, Tow failed to exercise the full extent of his discovery rights. As the Court set forth in its December Memorandum Opinion, in cases where identifying parties is difficult, filing suit early in order to obtain discovery rights is crucial. (ECF No. 394 at 9). The implication of this principle is that discovery rights are necessary to enable plaintiffs to correctly identify defendants. As a bankruptcy trustee Tow had substantial discovery rights. The Court declines to characterize this minor discovery dispute which Tow mildly pursued as an extraordinary circumstance that prevented Tow from timely filing suit against the appropriate defendants.[5]

[5] As set forth below, the Court also declines to characterize this discovery dispute as an effort by AST and DTC to conceal the identities of the movant defendants.

*Concealment*

Tow alleges that several parties, including the debtor, stood in the way of his ability to timely identify the appropriate defendants. (ECF No. 414 at 4); *See Bender v. Mann (In re Bender)*, 2010 WL 6467681, at *7 (B.A.P. 9th Cir. Nov. 15, 2010), *aff'd*, 480 F. App'x 445 (9th Cir. 2012). Tow cites authority for the proposition that the concealment sufficient to toll the statute of limitations need not be perpetrated by a defendant. See *In re IFS Fin. Corp.*, 2010 WL 4614293, at *2 (Bankr. S.D. Tex. November 2, 2010) ("The identity of the party concealing the fraud is immaterial, the critical factor is whether any of the parties involved concealed property of the estate."). Tow argues that if *any* person concealed information relevant to his identifying the appropriate defendants he should be entitled to equitable tolling. Specifically, Tow alleges that AST and DTC—both non-debtor, non-defendants—concealed information from Cooper & Scully relevant to its investigation of the preferred stockholders' identities.

The Court understands that concealment by a debtor may support equitable tolling. While allowing a debtor's concealment to be held against a defendant may seem unfair, an avoidance action by a bankruptcy trustee is unlike a typical civil litigation where the plaintiff has the informational advantage of being a party to the transfer. *Moratzka v. Pomaville (In re Pomaville)*, 190 B.R. 632, 637 (Bankr. D. Minn. 1995). Practically, a trustee may only be able to determine whether a cause of action exists by relying on information uniquely within the knowledge of the debtor.

However, there is no similar justification for extending the concealment rationale to a non-defendant, non-debtor. Statutes of limitation are designed in part to promote justice under the theory that "even if one has a just claim it is unjust not to put the adversary on notice to defend within the period of limitation and the right to be free of stale claims in time comes to

prevail over the right to prosecute them." *See* Tyler T. Ochoa & Andrew J. Wistrich, *The Puzzling Purpose of Statutes of Limitation*, 28 PAC. L. J. 453, 456-57 (1997). It would work an injustice to a defendant to refuse them entitlement to a statute of limitations defense because of the behavior of a party over which they have no control. The Court has not located any authority supporting Tow's assertion that concealment by a non-debtor, non-defendant can give rise to equitable tolling.

Accordingly, Tow's allegations that AST and DTC (non-debtor, non-defendants) concealed information crucial to timely identifying the correct defendants does not constitute a basis for equitable tolling.

Tow also alleges that Al Reese, Mike Biles, and Charles Kelly[6] either refused to provide him any information or provided him misleading information. (ECF No. 414 at 6). Biles and Kelly informed Cooper & Scully that AST would have information regarding the relevant dividend payments. (ECF No. 410 at 53). It is unclear what Tow asserts was misleading about the information provided by Biles and Kelly. Micah Dortch, an attorney at Cooper & Scully, confirmed that AST was the initial transferee of the dividend payment, consistent with what he was told by Biles and Kelly. (*Id.*). Tow also complains that Reese, who otherwise accommodated Cooper & Scully's requests, did not share information related to the preferred stockholders. (ECF No. 414 at 6). Attorneys from Cooper & Scully met with Reese on July 10, 2014, nearly one year before the statute of limitations period expired. It is uncertain whether Reese's silence regarding the dividend payments was an effort to conceal or mere lack of knowledge. If Reese simply did not know the identities of the preferred stockholders (or that AST was the initial transferee), his silence is not concealment that would give rise to equitable tolling. In any event, Tow determined that AST was the initial transferee of the preferred stock

[6] Charles Kelley was counsel for ATP in its Chapter 11 bankruptcy case. (Case No. 12-36187).

dividend on July 29, 2014, shortly after meeting with Reese. Accordingly, any concealment on the part of Reese regarding AST's receipt of the dividend payment was not prejudicial to Tow's investigation.

Finally, Tow alleges that equitable tolling should apply because Citi, in its response to Tow's subpoenas, concealed the identities of its preferred shareholder clients. The Court is concerned that such highly relevant and responsive information was redacted by Citi. (Tr. Ex. 90). Nevertheless, the Court is more concerned that Tow sent a subpoena that, on its face, did not require a response until *after* the statute of limitations period was to expire. (ECF Nos. 372-1 and 378-1) (requesting production of documents from Citi by June 29, 2015 at 10:00 a.m.). Citi could have fully and timely complied with the production request and Tow would still have not identified the preferred stockholders by the expiration of the limitations period.

Tow knew that Citi was the recipient of a dividend on April 20, 2015, the date DTC responded to Tow's subpoena. (Trustee's Ex. 21). Had Tow issued the subpoena in April it would have left time in the limitations period sufficient for Citi to respond. If Citi's response was deficient, Tow could have sought to compel a responsive production prior to the expiration of the limitations period. This did not occur. With full knowledge that the limitations period was expiring, Tow waited until May 28, 2015, to issue subpoenas to Citi, over a month after receiving the brokerage information from DTC,. (ECF Nos. 372-1 and 378-1).

*Diligence*

Diligence is measured using an objective standard. *Markus v. Fried (In re Geneva Steel LLC)*, 389 B.R. 231, 240 (Bankr. D. Utah 2008). Tow admits that he was aware of the dividend payments made to preferred stockholders one year before the statute of limitations expired on June 26, 2015, but he did not know the identity of the beneficial owners of the preferred shares.

(ECF No. 372 at 7). To the extent diligence is synonymous with hard work, it cannot be said that Tow failed to exercise diligence. While Tow's pursuit of document production from AST and DTC could have been more determined, it is apparent that Cooper & Scully committed significant attorney time and resources to identifying the appropriate defendants.

The Court recognizes Tow's diligence, but diligence alone does not support equitable tolling. As stated previously, either concealment or extraordinary circumstances (or both) must have frustrated Tow's diligent efforts to timely assert his claims. *Hill v. Oria (In re Juliet Homes, LP)*, 2010 WL 5256806, at *12 (Bankr. S.D. Tex. Dec. 16, 2010) (whether by concealment or extraordinary circumstances, a "trustee would have to show that, despite the exercise of due diligence, they could not have discovered the claims earlier."). It appears that Tow's diligent efforts were unfortunately misdirected.[7] There is no relief in law from the statute of limitations for such circumstances. The Court finds that neither concealment nor extraordinary circumstances were responsible for Tow's untimely complaint.

[7] To the extent Tow's inability to identify the preferred stockholder defendants prior to the expiration of the limitations period was a result of an ineffective investigative strategy, it does not provide a basis for tolling. *Montgomery v. Hale*, 648 F. App'x 444, 445 (5th Cir. 2016) ("attorney negligence, however styled, does not provide a basis for equitable tolling.").

**Conclusion**

At this stage in the litigation the Court must accept all allegations plead in satisfaction of Fed. R. Civ. P. 8. After hearing Tow's evidence in support of equitable tolling, the Court concludes that despite Tow's diligence, neither concealment nor extraordinary circumstances prevented him from discovering the identity of the Movant Defendants prior to the expiration of the limitations period. Amending the complaint to include a basis for equitable tolling would be futile. Accordingly, Tow's motion for leave to amend is denied. Tow's claims against the Movant Preferred Stockholder Defendants are dismissed.

The Court will issue an Order consistent with this Memorandum Opinion.

SIGNED **May 16, 2017.**

Marvin Isgur
UNITED STATES BANKRUPTCY JUDGE